## HANF, AD., V. WHITTINGTON, AD.

1. STATUTE OF LIMITATION : *Against administrator for fraud: Laches.*
   The statute of limitations begins to run against a creditor's bill to open an administrator's account for fraud, from the confirmation of the account by the probate court, as to parties then capable of suing; but against the estate of a party then deceased, will not begin to run until there is an administrator upon his estate; nor will laches be imputed where there is nobody capable of suing.

2. ADMINISTRATION: *Administrator obtaining false credits.*
   The obtaining of a false credit by the administrator for pretended payments which he had never made, by pretending to file vouchers which he never had, is a gross fraud upon the creditors, an imposition upon the court, and an abuse of the trust confided to him.

APPEAL from *Drew* Circuit Court, in Chancery.

Hon. J. M. BRADLEY, Circuit Judge.

*W. T. Wells* and *McCain & Crawford* for appellant.

1.   As to the question of limitation, this case is "on all fours" with *33 Ark., 141*, and *38 Ib., 243*.   Under certain circumstances a claim may be considered stale, but certainly not one confessedly not barred by limitation.

2.   The allegations of fraud are sufficiently specific. (See *23 Ark., 444; 20 Ib., 526*.)   If merely to omit a debit is a fraud, certainly the taking of a false credit is.

While it is true that a solemn record imports verity, yet the exception is fully as well established that all records can be attacked for fraud.   See *Chitty's Blackstone, volume 3, p. 24, note 3*, and every text writer on the subject since.

*Harrison & Harrison* for appellee.

1.   The account was a matter of record, and showed that the vouchers were filed, and it is well settled that nothing shall be averred against a record, or proof admitted to the contrary. (*3 Black. Com., 24; 1 Greenleaf's Evidence, sections 19, 227*.)   The supposition is inadmissible that the probate court so far disregarded its plain duty as to allow the credits without proper vouchers and proof.

2.   The allegation of fraud is too vague and general. *Story Eq. Pl., secs. 251–2; 35 Ark., 555; 24 Ark., 464; 14 Ark., 360; 8 Ark., 276.*

3.   The demands are stale, and no good reason shown for the laches or delay.   *1 Sto. Eq. Jur., sec. 64a, 529; 2 Ib., 1520–1522; Wood on Limitations, 118–121; 14 Ark., 478; 15 Ib., 286; 16 Ib., 129; 19 Ib., 21; 22 Ib., 272; 35 Ib., 137.*

And the objection when apparent on the face of the complaint may be taken by demurrer.   *Sto. Eq. Plead., secs. 503, 751; 14 Ark., 478; 16 Ib., 129.*

SMITH, J.  This is a bill by three creditors of an estate to open an administrator's account for fraud, upon the allegation that he had obtained credit for certain sums alleged to have been paid upon their claims, and had pretended to file receipts in support of such disbursements, when, in truth, no such vouchers were exhibited, nor had any such payments been made.  Meyer Meyer, the intestate, had died in 1865, and the plaintiffs had proved their several debts and recovered judgments of allowance in the probate court, as follows:

John Bloom for $3,037.50;  Charles Weil for $810;  and Augustus Meyer for $2,800.

The administrator had filed his final settlement account in July, 1871, and the same had, after due advertisement, been approved and confirmed by the probate court in October of the same year.

In this settlement he had claimed and received the following credits:

Paid on J. Bloom's claim, No. 8.............................$243  00
Paid on C. Weil's claim, No. 9 ..........................  64  80
Paid on A. Meyer's claim, No. 10........................ 235  00

Bloom and Weil at this time resided at Pine Bluff, fifty miles distant from the county seat of Drew County, where this administration was proceeding.  Augustus Meyer had been dead for several years and no administration had been then granted on his estate, nor afterward, until recently, before the commencement of this suit, in the year 1883.

To the bill setting up these facts, a general demurrer was sustained, and the bill dismissed.

Weil and the personal representative of Bloom are barred of all relief against the administrator of Meyer Meyer and his sureties.  More than eleven years have elapsed since the accrual of their cause of action.  The statute began to run against them from the confirmation of Whit-

STATUTE OF LIMITATIONS: Against administrator for fraud.

tington's account, and their complaint, however well founded, can not now be heard. The laws assist the vigilant, and not those who slumber over their rights.

But the administrator of Augustus Meyer is differently situated. His intestate was dead when Whittington made his settlement. No one was then in existence who could lawfully receive his *pro rata*, or give a valid acquittance therefor. Nor, until the qualification of Williamson, has there been any party in being who could institute a suit in his behalf, calling into question the payment upon his claim. In *McCustian v. Ramey, 33 Ark., 141*, and *Word v. West, 38 Ib., 243*, it was ruled that when the cause of action accrues to the estate of a decedent, the statute of limitations does not run until the appointment of an administrator. Nor can laches be imputed when there is nobody capable of suing; though, even in that case, after a great lapse of time, a court of equity might well decline to take cognizance from the difficulty of making proofs, and despair of doing exact justice between the parties.

FRAUD. The charges of fraud contained in the bill are suffi-
Obtaining false credit. ciently specific. They apprise the defendants and the court of the material facts on which the asserted right depends, and invite attention to the points to which testimony should be directed. *Conway v. Ellison, 14 Ark., 360; Crockett v. Lee, 7 Wheat., 527.*

Here it could be easily seen that the one thing which would require proof would be whether Whittington had paid Augustus Meyer's *pro rata* as shown by his account.

In *Ringgold v. Stone, 20 Ark., 526*, and in *Stone v. Stillwell, 23 Ib., 444*, it was held fraudulent for an administrator, knowingly and intentionally, to omit to charge himself with a debit, wherewith he was fairly chargeable. So the obtaining of a false credit was, if true in fact, a gross fraud upon the persons interested in the estate, an imposi-

tion upon the probate court and an abuse of the trust confided to this administrator.

The argument that Whittington's settlement account having been confirmed has become itself a record, which imports absolute verity, and can not be contradicted, hardly deserves mention. The rule is, that a fact once adjudicated by a court of record can not afterwards be inquired into. But the exception is as well established as the rule, viz., that even a solemn record may be impeached for fraud. This principle is independent of the statute, but section 128 of Gantt's Digest is an express recognition by the Legislature of the principle as applicable to this class of cases.

The decree is affirmed so far as it affects Weil and the administrator of Bloom, but as to the administrator of Augustus Meyer it is reversed, and the cause remanded, with directions to overrule the demurrer to the bill and to require the defendants to answer.